IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>PICK and PAY, Inc./CILI MINERALS, LLC,<br>a corporation, and ANTON S. BOTHA, an<br>individual,<br><br>    Defendants. | CIVIL NO. 6:17-cv-00279<br><br>JUDGE ROBERT G. JAMES<br>MAG. JUDGE PATRICK J. HANNA |

**CONSENT DECREE OF PERMANENT INJUNCTION**

Plaintiff, United States of America, by its undersigned attorneys, having filed its Complaint for Permanent Injunction against Pick and Pay, Inc./ Cili Minerals, LLC (aka Pick and Pay Hyper, Inc., dba Cili Minerals, Pick and Pay Hyper #2, Cili Minerals International, and Pick and Pay Hyper dba Cili Minerals), a corporation, and Anton S. Botha, an individual, (collectively, "Defendants"), and Defendants having appeared and consented to the entry of this Decree without contest and before any testimony has been taken, and the United States of America, having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1. This Court has jurisdiction over the subject matter of this action pursuant to 21 U.S.C. § 332 and 28 U.S.C. § 1345 and its inherent equitable authority and has personal jurisdiction over all parties to this action. Venue is proper in this district under 21 U.S.C. § 1391(b) and (c).

2. The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq. (the

"Act").

3. Defendants violate 21 U.S.C. § 331(d), by introducing or delivering for introduction, and causing to be introduced or delivered for introduction, into interstate commerce new drugs within the meaning of 21 U.S.C. § 321(p) that are neither approved under 21 U.S.C. § 355(a) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(i).

4. Defendants violate 21 U.S.C. § 331(a), by introducing or delivering for introduction, and causing to be introduced or delivered for introduction, into interstate commerce articles of drugs that are misbranded within the meaning of 21 U.S.C. § 352(f)(1) in that their labeling fails to bear adequate directions for use.

5. Defendants violate 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f)(1) in that their labeling fails to bear adequate directions for use.

6. Defendants violate 21 U.S.C. § 331(a) by introducing or delivering, or causing to be introduced or delivered, into interstate commerce food (dietary supplements) that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) and misbranded within the meaning of 21 U.S.C. §§ 343 (e)(1) & 343 (q)(5)(F).

7. Defendants violate 21 U.S.C. § 331(k) by causing dietary supplements that Defendants hold for sale after shipment in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) and misbranded within the meaning of 21 U.S.C. §§ 343 (e)(1) & 343 (q)(5)(F).

8. Defendants violate 21 U.S.C. § 331(dd) by failing to renew the facility registration for their facility engaged in manufacturing, processing, packing, or holding food (dietary supplements) in accordance with 21 U.S.C. § 350d.

9. Upon entry of this Decree, Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them who receive actual notice of this Decree by personal service or otherwise (collectively, "Associated Persons"), are permanently restrained and enjoined under 21 U.S.C. § 332(a) from introducing or delivering for introduction, and/or causing to be introduced or delivered for introduction, into interstate commerce any drug or dietary supplement unless and until:

A. Defendants have removed all claims from their product labels, labeling, promotional materials, websites owned or controlled directly or indirectly by or related to Defendants, including, but not limited to, www.ciliminerals.com, www.cilihealthstore.com, and www.cil-ergy.com or any website to be used in the future ("Defendants' websites"), and in any other source that cause Defendants' products to be drugs within the meaning of the Act; and

B. Defendants retain, at Defendants' expense, an independent person or persons (the "Labeling Expert"), who is without personal, financial (other than the consulting agreement between the parties), or familial ties to Defendants and their families or affiliates, who by reason of background, experience, education, and training is qualified to assess Defendants' compliance with the Act, to review the claims Defendants make for each of their products on all labels, labeling, promotional materials, and any internet websites indirectly or directly owned or controlled by or related to Defendants including, but not limited to, Defendants' websites, and to review Defendants dietary supplement labeling. Defendants shall notify FDA in writing, of the identity and qualifications of the Labeling Expert as soon as they retain such expert. At the conclusion of the Labeling Expert's review, the Labeling Expert shall prepare a written report analyzing whether Defendants are operating in compliance with the Act and in particular, certify

whether: (1) Defendants have omitted claims from each of their product labels, labeling, promotional materials, websites owned or controlled by or related to Defendants, and in any other source that Defendants' products diagnose, cure, mitigate, treat or prevent diseases within the meaning of the Act, 21 U.S.C. § 321(g) which cause these products to be drugs; and (2) Defendants have revised their product labels and labeling of all of their dietary supplements to ensure that the labels and labeling are in compliance with the Act, 21 U.S.C. § 343, applicable regulations, and this Decree; the report shall include the specific results of the Labeling Expert's review, including references to product names and regulations addressed in the process of conducting the review. The report shall also include copies of all materials reviewed by the Labeling Expert. The Labeling Expert shall submit this report concurrently to Defendants and FDA no later than twenty (20) calendar days after completing this review;

   C. Defendants retain, at Defendants' expense, an independent person or persons (the "Dietary Supplement current Good Manufacturing Practice (" cGMP") Expert"), who is without personal, financial (other than the consulting agreement between the parties), or familial ties to Defendants or their families, and who by reason of background, experience, education, and training is qualified to inspect Defendants' facilities to determine whether the facilities, methods, processes, and controls are operated and administered in conformity with the Dietary Supplement cGMP regulations, 21 C.F.R. Part 111. Defendants, if appropriate, may retain as the Dietary Supplement cGMP Expert the same independent party they retained as the Labeling Expert. Defendants shall notify FDA in writing of the identity and qualifications of the Dietary Supplement cGMP Expert as soon as they retain such expert;

   D. The Dietary Supplement cGMP Expert shall perform a comprehensive inspection of Defendants' manufacturing facility and the methods and controls used to manufacture,

prepare, pack, label, hold, and distribute dietary supplements, and certify in writing to FDA that (1) he or she has inspected Defendants' facility, methods, processes, and controls; and (2) whether Defendants' operations are in compliance with 21 U.S.C. § 342(g)(1), its implementing regulations, and this Decree. The Dietary Supplement cGMP Expert's report of the inspection shall be submitted concurrently to Defendants and FDA no later than twenty (20) calendar days after he or she completes the inspection. This report shall include, but not be limited to, the Dietary Supplement cGMP Expert's assessment of whether Defendants comply with 21 C.F.R. Part 111, including, but not limited to whether Defendants have:

(1) Established a written master manufacturing record for each unique dietary supplement formulation, and each batch size, as required by 21 C.F.R. §§ 111.205 & 210;

(2) Prepared a batch production record for each manufactured dietary supplement batch, as required by 21 C.F.R. §§ 111.255 & 260;

(3) Established specifications for each dietary supplement component, label, and packaging used in the manufacture of a dietary supplement, as required by 21 C.F.R. § 111.70(b), (d), (e) & (g); and

(4) Established product specifications for the identity, purity, strength, and composition of the finished batch of dietary supplement, and tested or verified the identity of the dietary components, as required by 21 C.F.R. §§ 111.73, 111.75(a)(1) & 111.75(c);

E. Should the Labeling Expert or Dietary Supplement cGMP Expert (collectively, "Experts") identify any deficiencies in their reports as described in Paragraphs 9(B) and 9(D):

(1) Defendants shall report to FDA and the Experts in writing the actions they have taken to correct all such deficiencies; and

(2) The Experts shall certify in writing to FDA whether, based upon the Experts' further

5

review and/or inspection(s), (1) Defendants' facilities and their methods, processes, and controls used to manufacture, prepare, pack, label, hold, distribute, and promote their drug and dietary supplement products appear to be in compliance with the Act, its implementing regulations, and this Decree, and (2) whether Defendants have omitted all claims from each of their product labels, labeling, promotional materials, websites owned or controlled by or related to Defendants, and in any other media that cause any of the Defendants' products to be drugs within the meaning of the Act;

    F. Defendants recall and destroy, under FDA's supervision and in accordance with the procedures provided in Paragraph 11, all of Defendants' products that were manufactured, prepared, packed, labeled, held, and/or distributed between June 1, 2014, and the date this Decree is entered;

    G. Defendants renew their facility registration for their manufacturing facility, in accordance with 21 U.S.C. § 350d and 21 C.F.R. part 1 subpart H.

    H. FDA representatives inspect Defendants' facilities to determine whether the requirements of this Decree have been met and whether Defendants are operating in conformity with the Act, its implementing regulations, and this Decree; and

    I. FDA notifies Defendants in writing that Defendants appear to be in compliance with the requirements set forth in Paragraphs 9(A) - (G). In no circumstance shall FDA's silence be construed as a substitute for written notification.

    10.    Paragraph 9 shall not apply to any products for which Defendants have in effect an approved new drug application or abbreviated new drug application filed pursuant to 21 U.S.C. §§ 355(b) or (j), and/or an investigational new drug exemption filed pursuant to 21 U.S.C. § 355(i) for all such products, and Defendants comply with current good manufacturing practice

for drugs. See 21 C.F.R. Parts 210 and 211.

11. Within fifteen (15) calendar days after the entry of this Decree, Defendants, under FDA's supervision, shall destroy all drugs and dietary supplements that are in Defendants' possession, custody, or control. Defendants shall bear the costs of destruction and the costs of FDA's supervision at the rates specified in Paragraph 18. Defendants shall not dispose of any drugs or dietary supplements in a manner contrary to the provisions of the Act, any other federal law, or the laws of any State or Territory, as defined in the Act, in which the drugs or dietary supplements are disposed.

12. After Defendants have complied with Paragraphs 9(A)-(H) and received FDA's written notification pursuant to Paragraph 9(I), Defendants shall retain an independent person or persons who shall meet the criteria described in Paragraphs 9(B) and 9(C) to conduct audit inspections of Defendants' facilities no less frequently than once every six (6) months for a period of no less than five (5) years (hereinafter, the "Auditor"). The first audit shall occur not more than six months after Defendants have received FDA's written notification pursuant to Paragraph 9(I). If Defendants choose, the Auditor may be the same person or persons retained as the Labeling Expert or Dietary Supplement cGMP Expert described in Paragraphs 9(B)-(C).

A. At the conclusion of each audit inspection, the Auditor shall prepare a detailed written audit report ("Audit Report") analyzing whether Defendants are in compliance with Dietary Supplement cGMP for their dietary supplement operations and identifying any deviations from such requirements ("Audit Report Observations").

B. Each Audit Report shall contain a written certification that the Auditor: (a) has personally reviewed all of Defendants' product labels, labeling, promotional materials, and websites; and (b) whether there are claims that cause any of Defendants' products to be drugs

within the meaning of the Act, 21 U.S.C. §321(g), and whether Defendants are in compliance with the requirements of the Act, its implementing regulations, and this Decree.

C. As a part of every Audit Report, the Auditor shall assess the adequacy of corrective actions taken by Defendants to correct all previous Audit Report observations. The Audit Reports shall be delivered contemporaneously to Defendants and FDA by courier service or overnight delivery service, no later than fifteen (15) business days after the date the Audit Inspection is completed. In addition, Defendants shall maintain the Audit Reports in separate files at Defendants' facilities and shall promptly make the Audit Reports available to FDA upon request.

D. If an Audit Report contains any observations indicating that Defendants' drugs and/or dietary supplements are not in compliance with the Act, its implementing regulations, and/or this Decree, Defendants shall, within fifteen (15) calendar days of receipt of the Audit Report, correct those observations, unless FDA notifies Defendants that a shorter time period is necessary. If, after receiving the Audit Report, Defendants believe that correction of the deviations may take longer than fifteen (15) calendar days, Defendants shall, within ten (10) calendar days of receipt of the Audit Report, submit to FDA in writing a proposed schedule for completing corrections ("Audit Correction Schedule"). The Audit Correction Schedule must be reviewed and approved by FDA in writing prior to implementation by Defendants. In no circumstance shall FDA's silence be construed as a substitute for written approval. Defendants shall complete all corrections according to the approved Audit Correction Schedule.

E. Immediately upon correction, Defendants shall submit documentation of their corrections to the Auditor. Within thirty (30) calendar days after the Auditor's receipt of Defendants' documentation of corrections, unless FDA notifies Defendants that a shorter time

period is necessary, or within the time period provided in a correction schedule approved by FDA, the Auditor shall review the actions taken by Defendants to correct the Audit Report Observations. Within five (5) business days after beginning that review, the Auditor shall report in writing to FDA whether each of the Audit Report Observations has been corrected and, if not, which Audit Report Observations remain uncorrected.

    13. Upon entry of this Decree, Defendants and their Associated Persons are permanently restrained and enjoined from directly or indirectly doing or causing any of the following acts:

    A. Violating 21 U.S.C. § 331(d), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce new drugs within the meaning of 21 U.S.C. § 321(p) that are neither approved pursuant to 21 U.S.C. § 355(a) or (j), nor exempt from approval pursuant to 21 U.S.C. § 355(i);

    B. Violating 21 U.S.C. § 331(a), by introducing or delivering, or causing to be introduced or delivered, into interstate commerce drugs that are misbranded within the meaning of 21 U.S.C. § 352(f)(1), or dietary supplements that are adulterated within the meaning of 21 U.S.C. § 342(g)(1) and/or misbranded within the meaning of 21 U.S.C§ 343 (e)(1) & (q)(5)(F).

    C. Violating 21 U.S.C. § 331(k), by causing drugs that Defendants hold for sale after shipment in interstate commerce to become misbranded within the meaning of 21 U.S.C. § 352(f)(1) or by causing dietary supplements that Defendants hold for sale after shipment in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 342(g)(1) and/or misbranded within the meaning of 21 U.S.C. § 343 (e)(1) & (q)(5)(F).

    14. If, at any time after this Decree has been entered, FDA determines, based on the results of an inspection, a review of Defendants' products, product labels, labeling, promotional materials, or websites directly or indirectly owned or controlled by or related to Defendants, a

report prepared by Defendants' Experts or the Auditor, or any other information, that Defendants have failed to comply with any provision of this Decree, have violated the Act, or its implementing regulations, or that additional corrective actions are necessary to achieve compliance with the Act, applicable regulations, and/or this Decree, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

      A.    Cease manufacturing, processing, packing, labeling, holding, promoting, and/or distributing any or all drugs and/or dietary supplements;

      B.    Revise, modify, expand, or continue to submit any reports or plans prepared pursuant to this Decree;

      C.    Submit additional reports or information to FDA as requested;

      D.    Pay liquidated damages as provided in Paragraph 24 below;

      E.    Recall any article(s) at Defendants' expense; or

      F.    Take any other corrective action(s) as FDA, in its discretion, deems necessary to bring Defendants and their products into compliance with the Act, applicable regulations, and/or this Decree.

This remedy shall be separate and apart from, and in addition to, any other remedy available to the United States under this Decree or under the law.

      15.    Upon receipt of any order issued by FDA pursuant to Paragraph 14, Defendants shall immediately and fully comply with the terms of the order. Any cessation of operations or other action described in Paragraph 14 shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with this Decree, the Act, and

its implementing regulations, and that Defendants may resume operations. The cost of FDA inspections, sampling, testing, travel time, and subsistence expenses to implement the remedies set forth in Paragraph 14 shall be borne by Defendants at the rates specified in Paragraph 18.

16. Within ten (10) calendar days after FDA's request for any labels, labeling, promotional materials, and/or downloaded copies (on CD-Rom) of any websites directly or indirectly owned and controlled by or related to Defendants, Defendants shall submit a copy of the requested materials to FDA at the address specified in Paragraph 23.

17. FDA representatives shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' facilities and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree. During such inspections, FDA representatives shall be permitted immediate access to buildings, equipment, in-process and finished materials, containers, labeling and other materials therein; to take photographs and make video recordings; to take samples of Defendants' finished and unfinished materials and products, containers, labels, labeling, and other promotional materials; and to examine and copy all records relating to the receipt, manufacture, processing, packing, labeling, holding, and distribution of any and all of Defendants' products. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. FDA representatives may monitor Defendants' compliance with this Decree by all lawful means, including but not limited to using representatives posing as a customer or potential customer to contact Defendants' websites, employees, representatives, Associated Persons, and/or any other person or entity managed or controlled in whole or in part by Defendants, without the necessity of identification or prior notice. The inspection authority granted by this Decree is separate from, and in addition to, the authority to conduct inspections

under the Act, 21 U.S.C. § 374.

18. Defendants shall reimburse FDA for the costs of all FDA inspections, investigations, supervision, reviews, examinations, and analyses specified in this Decree or that FDA deems necessary to evaluate Defendants' compliance with this Decree. For the purposes of this Decree, inspections include FDA's review and analysis of Defendants' claims contained in product labels, labeling, promotional materials, and any and all websites directly or indirectly owned or controlled by or related to Defendants. The costs of such inspections shall be borne by Defendants at the prevailing rates in effect at the time the costs are incurred. As of the date that this Decree is signed by the parties, these rates are: $93.26 per hour and fraction thereof per representative for inspection work; $111.77 per hour or fraction thereof per representative for analytical or review work; $0.535 per mile for travel expenses by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per-day, per-representative for subsistence expenses, where necessary. In the event that the standard rates applicable to FDA supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of the Court.

19. Within ten (10) calendar days after the entry of this Decree, Defendants shall provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to each and all of their Associated Persons, and post the Decree on all websites under Defendants' control, including, but not limited to, www.cil-ergy.com, www.cilihealthstore.com, and www.ciliminerals.com.

20. Within thirty (30) calendar days after the entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, stating the fact and manner of compliance with the

provisions of this Paragraph and identifying the names and positions of all Associated Persons who have received a copy of this Decree and the manner of notification. In the event that Defendants become associated, at any time after the entry of this Decree, with new Associated Persons, Defendants shall: (a) within fifteen (15) calendar days of such association, provide a copy of this Decree to each such Associated Person by personal service or certified mail (restricted delivery, return receipt requested), and (b) within fifteen (15) calendar days notify FDA in writing when, how, and to whom the Decree was provided.

21. Defendants shall notify FDA, in writing, at the address specified in Paragraph 23, at least fifteen (15) calendar days before any change in ownership, character, or name of its business, such as dissolution, assignment, or sale resulting in the emergence of a successor corporation, the creation or dissolution of subsidiaries, franchises, affiliates, or "doing business as" entities, or any other change in the corporate structure of Pick & Pay, Inc. dba Cili Minerals, LLC or in the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect compliance with this Decree. Defendants shall provide a copy of this Decree to any potential successor or assignee at least fifteen (15) calendar days before any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this Paragraph no later than ten (10) calendar days before such assignment or change in ownership.

22. Should Jeremy M. Tezeno become affiliated again with Defendant Pick and Pay, Inc./ Cili Minerals, LLC, or should Defendants learn that Mr. Tezeno has become affiliated with any other entity that receives, processes, prepares, packs, holds, and/or distributes drugs or food, Defendants must notify FDA in writing at the address specified in Paragraph 23.

23. All notifications, certifications, reports, correspondence, and other communications to FDA required by this Decree shall be addressed to the Director, New Orleans

District Office, United States Food and Drug Administration, 404 BNA Drive, Building 200, Suite 500, Nashville, Tennessee, 37217.

24. If Defendants fail to comply with the Act, its implementing regulations, and/or any provision of this Decree, including any time frame imposed by this Decree, Defendants shall pay to the United States of America: (a) ten thousand dollars ($10,000) in liquidated damages for each violation of the Act, its implementing regulations, and/or this Decree; (b) an additional three thousand dollars ($3,000) in liquidated damages per day, per violation, for each violation of the Act, its implementing regulations, and/or this Decree; and (c) an additional sum in liquidated damages equal to twice the retail value of any distributed drugs or dietary supplements that are adulterated, misbranded, or otherwise in violation of the Act, its implementing regulations, and/or this Decree. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, and the Court to impose, additional criminal or civil penalties based on conduct that may also be the basis for payment of the liquidated damages.

25. Should the United States bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees, investigational expenses, expert witness fees, travel expenses incurred by attorneys and witnesses, and administrative court costs relating to such contempt proceedings.

26. All decisions specified in this Decree shall be vested in the discretion of FDA and shall be final. If contested, FDA's decisions under this Decree shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review shall be based exclusively on the written record before FDA at the time the decision was made. No discovery shall be taken by either party.

27.     This Court retains jurisdiction of this action for the purpose of enforcing or modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

IT IS SO ORDERED.

Dated this 17th day of February, 2017.

_____
UNITED STATES DISTRICT JUDGE

Entry consented to:

FOR DEFENDANTS

_____
Anton S. Botha, individually and on behalf of
Pick and Pay, Inc./ Cili Minerals, LLC
P.O. Box 1050
Scott, LA 70583
(337) 781-2150
antonsbotha@gmail.com

_____
Tinashe E. Chimwaza
Tinashe Law
P.O. Box 13709
Alexandria, LA 71315
(318) 652-8255
tinashe@tinashelaw.com
Attorney for Pick and Pay, Inc./
Cili Minerals, LLC

FOR PLAINTIFF

STEPHANIE A. FINLEY
United States Attorney

KAREN J. KING
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of Louisiana
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
(318) 676-3600
Karen.King@usdoj.gov

JOYCE R. BRANDA[1]
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

MICHAEL S. BLUME
Director
Consumer Protection Branch

JILL FURMAN
Deputy Director
Consumer Protection Branch

---

[1] Chad A. Readler has replaced Ms. Branda as Acting Assistant Attorney General for the Civil Division of the Justice Department.

*Christopher M. O'Connell*
CHRISTOPHER M. O'CONNELL
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 514-0515
Christopher.M.O'Connell@usdoj.gov

OF COUNSEL:

JEFFREY S. DAVIS
Acting General Counsel

ELIZABETH H. DICKINSON
Chief Counsel
Food and Drug Division

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation

ARIEL Z. SEELEY
Associate Chief Counsel
U.S. Department of Health and
Human Services
Office of the General Counsel
10903 New Hampshire Ave.
Silver Spring, MD 20993-0002
(301) 796-8738